1  TRACY L. WILKISON
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
4  Assistant United States Attorney
   Chief, Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-2432
7       Facsimile: (213) 894-6269
        E-mail:   ranee.katzenstein@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR   5:21-cr-00187-JWH

13            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     GABRIELA LLERENAS
14            v.

15  GABRIELA LLERENAS,
      aka "Maria G. Sandoval,"
16
              Defendant.
17

18
19       1.   This constitutes the plea agreement between GABRIELA

20  LLERENAS, also known as "Maria G. Sandoval," ("defendant") and the

21  United States Attorney's Office for the Central District of

22  California (the "USAO") in the investigation of fraudulent

23  Unemployment Insurance Claims filed with the California Employment

24  Development Department ("EDD") from in or about April 2020 to at

25  least October 2020.  This agreement is limited to the USAO and cannot

26  bind any other federal, state, local, or foreign prosecuting,

27  enforcement, administrative, or regulatory authorities.

28  //

FILED
CLERK, U.S. DISTRICT COURT

9/8/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ JB _____ DEPUTY

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with mail fraud in violation of 18 U.S.C. § 1341.

b.   Agree that all court appearances, including her change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-043 or another order, rule, or statute.  Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), she may have the right to be physically present at these hearings.  Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver.  Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with her initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with her waiver of indictment, under Federal

2

Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

        iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with her change of plea hearing by VTC or telephone, if VTC is not reasonably available.

        iv. Defendant consents under Section 15002(b) of the CARES Act to proceed with her sentencing hearing by VTC or telephone, if VTC is not reasonably available.

        v. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

        c. Not contest facts agreed to in this agreement.

        d. Abide by all agreements regarding sentencing contained in this agreement.

        e. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        f. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        g. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        h. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

1      3.    Defendant further agrees to cooperate fully with the

2  Department of Labor-Office of Inspector General and, as directed by

3  the USAO, any other federal, state, local, or foreign prosecuting,

4  enforcement, administrative, or regulatory authority.   This

5  cooperation requires defendant to:

6          a.   Respond truthfully and completely to all questions

7  that may be put to defendant, whether in interviews, before a grand

8  jury, or at any trial or other court proceeding.

9          b.   Attend all meetings, grand jury sessions, trials or

10  other proceedings at which defendant's presence is requested by the

11  USAO or compelled by subpoena or court order.

12          c.   Produce voluntarily all documents, records, or other

13  tangible evidence relating to matters about which the USAO, or its

14  designee, inquires.

15      4.    For purposes of this agreement: (1) "Cooperation

16  Information" shall mean any statements made, or documents, records,

17  tangible evidence, or other information provided, by defendant

18  pursuant to defendant's cooperation under this agreement or pursuant

19  to the letter agreement previously entered into by the parties dated

20  February 25, 2021 (the "Letter Agreement"); and (2) "Plea

21  Information" shall mean any statements made by defendant, under oath,

22  at the guilty plea hearing and the agreed to factual basis statement

23  in this agreement.

24      5.    Defendant further agrees:

25          a.   To forfeit all right, title, and interest in and to

26  any and all monies, properties, and/or assets of any kind, derived

27  from or acquired as a result of the illegal activity to which

28  defendant is pleading guilty, specifically including, but not limited

4

to, the approximately $621,124.00 in U.S. Currency seized on or about October 20, 2020 (the "Forfeitable Property"), which Forfeitable Property defendant agrees constitutes traceable proceeds of the 18 U.S.C. § 1341 violation for which defendant is entering a plea of guilty and renders the Forfeitable Property subject to forfeiture pursuant to 18 U.S.C. § 981, 18 U.S.C. § 982, 21 U.S.C. § 2461(c), or otherwise.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the Forfeitable Property.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture, the execution of waivers by third parties who might claim an interest in the Forfeitable Property, and the completing of any other legal documents required for the transfer of title of the Forfeitable Property to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of herself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

5

1          f.   Not to claim that reasonable cause to seize the

2   Forfeitable Property was lacking.

3          g.   To prevent the transfer, sale, destruction, or loss of

4   any and all assets described above to the extent defendant has the

5   ability to do so.

6          h.   To fill out and deliver to the USAO a completed

7   financial statement listing defendant's assets on a form provided by

8   the USAO.

9          i.   That forfeiture of Forfeitable Property shall not be

10  counted toward satisfaction of any special assessment, fine,

11  restitution, costs, or other penalty the Court may impose.

12          j.   With respect to any criminal forfeiture ordered as a

13  result of this plea agreement, defendant waives: (1) the requirements

14  of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

15  notice of the forfeiture in the charging instrument, announcements of

16  the forfeiture at sentencing, and incorporation of the forfeiture in

17  the judgment; (2) all constitutional and statutory challenges to the

18  forfeiture (including by direct appeal, habeas corpus or any other

19  means); and (3) all constitutional, legal, and equitable defenses to

20  the forfeiture of the Forfeitable Property in any proceeding on any

21  grounds including, without limitation, that the forfeiture

22  constitutes an excessive fine or punishment.  Defendant acknowledges

23  that the forfeiture of the Forfeitable Property is part of the

24  sentence that may be imposed in this case and waives any failure by

25  the Court to advise defendant of this, pursuant to Federal Rule of

26  Criminal Procedure 11(b)(1)(J), at the time the Court accepts

27  defendant's guilty plea.

28

1                          <u>THE USAO'S OBLIGATIONS</u>

2        6.   The USAO agrees to:

3             a.   Not contest facts agreed to in this agreement.

4             b.   Abide by all agreements regarding sentencing contained

5   in this agreement.

6             c.   At the time of sentencing, provided that defendant

7   demonstrates an acceptance of responsibility for the offense up to

8   and including the time of sentencing, recommend a two-level reduction

9   in the applicable Sentencing Guidelines offense level, pursuant to

10  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

11  additional one-level reduction if available under that section.

12            d.   Recommend that defendant be sentenced to a term of

13  imprisonment no higher than the low end of the applicable Sentencing

14  Guidelines range, provided that the offense level used by the Court

15  to determine that range is 24 or higher and provided that the Court

16  does not depart downward in offense level or criminal history

17  category.  For purposes of this agreement, the low end of the

18  Sentencing Guidelines range is that defined by the Sentencing Table

19  in U.S.S.G. Chapter 5, Part A.

20            e.   Except for criminal tax violations (including

21  conspiracy to commit such violations chargeable under 18 U.S.C.

22  § 371), not further criminally prosecute defendant for violations of

23  18 U.S.C. §§ 1028A (Aggravated Identity Theft), 1029 (Fraud and

24  related activity in connection with access devices), 1341 (Mail

25  Fraud), 1343 (Wire Fraud), and 1349 (Attempt and Conspiracy to Commit

26  Mail and/or Wire Fraud) arising out of defendant's conduct described

27  in the agreed-to factual basis set forth in Exhibit B attached

28  hereto.  Defendant understands that the USAO is free to criminally

                                   7

1  prosecute defendant for any other unlawful past conduct or any

2  unlawful conduct that occurs after the date of this agreement.

3  Defendant agrees that at the time of sentencing the Court may

4  consider the uncharged conduct in determining the applicable

5  Sentencing Guidelines range, the propriety and extent of any

6  departure from that range, and the sentence to be imposed after

7  consideration of the Sentencing Guidelines and all other relevant

8  factors under 18 U.S.C. § 3553(a).

9      7.   The USAO further agrees:

10         a.   Not to offer as evidence in its case-in-chief in the

11  above-captioned case or any other criminal prosecution that may be

12  brought against defendant by the USAO, or in connection with any

13  sentencing proceeding in any criminal case that may be brought

14  against defendant by the USAO, any Cooperation Information.

15  Defendant agrees, however, that the USAO may use both Cooperation

16  Information and Plea Information: (1) to obtain and pursue leads to

17  other evidence, which evidence may be used for any purpose, including

18  any criminal prosecution of defendant; (2) to cross-examine defendant

19  should defendant testify, or to rebut any evidence offered, or

20  argument or representation made, by defendant, defendant's counsel,

21  or a witness called by defendant in any trial, sentencing hearing, or

22  other court proceeding; and (3) in any criminal prosecution of

23  defendant for false statement, obstruction of justice, or perjury.

24         b.   Not to use Cooperation Information against defendant

25  at sentencing for the purpose of determining the applicable guideline

26  range, including the appropriateness of an upward departure, or the

27  sentence to be imposed, and to recommend to the Court that

28  Cooperation Information not be used in determining the applicable

8

guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

8.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

9

1       c.    Defendant cannot withdraw defendant's guilty plea if
2  the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a
3  reduced guideline range or if the USAO makes such a motion and the
4  Court does not grant it or if the Court grants such a USAO motion but
5  elects to sentence above the reduced range.

6       d.    At this time the USAO makes no agreement or
7  representation as to whether any cooperation that defendant has
8  provided or intends to provide constitutes or will constitute
9  substantial assistance.  The decision whether defendant has provided
10 substantial assistance will rest solely within the exclusive judgment
11 of the USAO.

12      e.    The USAO's determination whether defendant has
13 provided substantial assistance will not depend in any way on whether
14 the government prevails at any trial or court hearing in which
15 defendant testifies or in which the government otherwise presents
16 information resulting from defendant's cooperation.

17                    NATURE OF THE OFFENSE
18      9.   Defendant understands that for defendant to be guilty of
19 the crime charged in count one of the information, that is, mail
20 fraud, in violation of Title 18, United States Code, Sections 1341,
21 the following must be true:

22      a.    First, the defendant knowingly participated in a
23 scheme or plan to defraud, or a scheme or plan for obtaining money or
24 property by means of false or fraudulent pretenses, representations,
25 or promises;

26      b.    Second, the statements made or facts omitted as part
27 of the scheme were material, that is, they had a natural tendency to

28

1  influence, or were capable of influencing, a person to part with

2  money or property;

3          c.  Third, the defendant acted with the intent to defraud,

4  that is, the intent to deceive and cheat; and

5          d.  Fourth, the defendant used, or caused to be used, the

6  mails to carry out or attempt to carry out an essential part of the

7  scheme.  A mailing is caused when one knows that the mails will be

8  used in the ordinary course of business or when one can reasonably

9  foresee such use. It does not matter whether the material mailed was

10  itself false or deceptive so long as the mail was used as a part of

11  the scheme, nor does it matter whether the scheme or plan was

12  successful or that any money or property was obtained.

13                    PENALTIES AND RESTITUTION

14     10.  Defendant understands that the statutory maximum sentence

15  that the Court can impose for a violation of Title 18, United States

16  Code, Section 1341, is: a 20-year term of imprisonment; a 3-year

17  period of supervised release; a fine of $250,000 or twice the gross

18  gain or gross loss resulting from the offense, whichever is greatest;

19  and a mandatory special assessment of $100.

20     11.  Defendant understands that defendant will be required to

21  pay full restitution to the victim(s) of the offense to which

22  defendant is pleading guilty.  Defendant agrees that, in return for

23  the USAO's compliance with its obligations under this agreement, the

24  Court may order restitution to persons other than the victim(s) of

25  the offense to which defendant is pleading guilty and in amounts

26  greater than those alleged in the count to which defendant is

27  pleading guilty.  In particular, defendant agrees that the Court may

28  order restitution to any victim of any of the following for any

                              11

losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges. The parties currently believe that the applicable amount of restitution is at least $1,633,487 and the government currently believes that the applicable amount of restitution is approximately $4,298,093, but the parties both recognize and agree that these amounts could change based on facts that come to the attention of the parties prior to sentencing.

12. Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program. To that end, the government will file a post-judgment lien against defendant's property, but agrees to refrain from any active collection action against defendant's primary residence. Notwithstanding the foregoing, in the event defendant sells, conveys, or otherwise transfers her interest in her primary residence, defendant agrees and consents that the government will be entitled to apply the proceeds of such transfer to her anticipated restitution obligation.

13. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised

12

release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that she is pleading guilty to a felony and
that it is a federal crime for a convicted felon to possess a firearm
or ammunition.   Defendant understands that the conviction in this
case may also subject defendant to various other collateral
consequences, including but not limited to revocation of probation,
parole, or supervised release in another case and suspension or
revocation of a professional license.   Defendant understands that
unanticipated collateral consequences will not serve as grounds to
withdraw defendant's guilty plea.

15.   Defendant and her counsel have discussed the fact that, and
defendant understands that, if defendant is not a United States
citizen, the conviction in this case makes it practically inevitable
and a virtual certainty that defendant will be removed or deported
from the United States.   Defendant may also be denied United States
citizenship and admission to the United States in the future.
Defendant understands that while there may be arguments that
defendant can raise in immigration proceedings to avoid or delay
removal, removal is presumptively mandatory and a virtual certainty
in this case.   Defendant further understands that removal and

13

1    immigration consequences are the subject of a separate proceeding and

2    that no one, including her attorney or the Court, can predict to an

3    absolute certainty the effect of her conviction on her immigration

4    status.  Defendant nevertheless affirms that she wants to plead

5    guilty regardless of any immigration consequences that her plea may

6    entail, even if the consequence is automatic removal from the United

7    States.

8                               FACTUAL BASIS

9         16.  Defendant admits that defendant is, in fact, guilty of the

10   offense to which defendant is agreeing to plead guilty.  Defendant

11   and the USAO agree to the statement of facts provided in Exhibit B

12   attached hereto and agree that this statement of facts is sufficient

13   to support a plea of guilty to the charge described in this agreement

14   and to establish the Sentencing Guidelines factors set forth in

15   paragraph 18 below but is not meant to be a complete recitation of

16   all facts relevant to the underlying criminal conduct or all facts

17   known to either party that relate to that conduct.

18                             SENTENCING FACTORS

19        17.  Defendant understands that in determining defendant's

20   sentence the Court is required to calculate the applicable Sentencing

21   Guidelines range and to consider that range, possible departures

22   under the Sentencing Guidelines, and the other sentencing factors set

23   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

24   Sentencing Guidelines are advisory only, that defendant cannot have

25   any expectation of receiving a sentence within the calculated

26   Sentencing Guidelines range, and that after considering the

27   Sentencing Guidelines and the other § 3553(a) factors, the Court will

28   be free to exercise its discretion to impose any sentence it finds

                                    14

1  appropriate up to the maximum set by statute for the crime of

2  conviction.

3      18.  Defendant and the USAO agree to the following applicable

4  Sentencing Guidelines factors:

5    Base Offense Level:        7        U.S.S.G. § 2B1.1(a)(1)

6    Specific Offense        +16
     Characteristics

7                       or  U.S.S.G. § 2B1.1(b)(1)(I) or
     Loss greater than $1,500,000

8    but less than $9,500,000  +18                (J)

9

10   More than 10 Victims    +2  U.S.S.G. § 2B1.1(b)(2)(A)(i)

11   Unauthorized use of means of
     ID to obtain other means of

12   ID and/or possession of
     means of ID that were

13   unlawfully produced by use
     of another means of ID    +2    U.S.S.G. § 2B1.1(b)(11)(C)

14
     Acceptance of Responsibility  -3      U.S.S.G. § 3E1.1(a), (b)

15   TOTAL OFFENSE LEVEL      24

16                          or

17                          26

18

19 The USAO will agree to a two-level downward adjustment for acceptance

20 of responsibility (and, if applicable, move for an additional one-

21 level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the

22 conditions set forth in paragraph 3(c) are met and if defendant has

23 not committed, and refrains from committing, acts constituting

24 obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as

25 discussed below.  Regarding loss, the parties agree that the loss

26 caused by defendant's offense, taking into account relevant conduct,

27 is at least $1,633,487; the government reserves the right to argue

28 that the loss is $4,298,093 and defendant reserves the right to argue

that the loss does not exceed $3.5 million.  Subject to paragraphs

7(d) above and 31 below, defendant and the USAO agree not to seek,

argue, or suggest in any way, either orally or in writing, that any

other specific offense characteristics, adjustments, or departures

relating to the offense level be imposed.  Defendant agrees, however,

that if, after signing this agreement but prior to sentencing,

defendant were to commit an act, or the USAO were to discover a

previously undiscovered act committed by defendant prior to signing

this agreement, which act, in the judgment of the USAO, constituted

obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the

USAO would be free to seek the enhancement set forth in that section

and to argue that defendant is not entitled to a downward adjustment

for acceptance of responsibility under U.S.S.G. § 3E1.1.

19.  Defendant understands that there is no agreement as to

defendant's criminal history or criminal history category.

20.  Defendant and the USAO reserve the right to argue for a

sentence outside the sentencing range established by the Sentencing

Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

(a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.  Defendant understands that by pleading guilty, defendant

gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

    c.   The right to be represented by counsel -- and if

necessary have the Court appoint counsel -- at trial.  Defendant

understands, however, that, defendant retains the right to be

16

represented by counsel -- and if necessary have the Court appoint
counsel -- at every other stage of the proceeding.

       d.   The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant guilty
beyond a reasonable doubt.

       e.   The right to confront and cross-examine witnesses
against defendant.

       f.   The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

       g.   The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

       h.   Any and all rights to pursue any affirmative defenses,
Fourth Amendment or Fifth Amendment claims, and other pretrial
motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

    22.  Defendant understands that, with the exception of an appeal
based on a claim that defendant's guilty plea was involuntary, by
pleading guilty defendant is waiving and giving up any right to
appeal defendant's conviction on the offense to which defendant is
pleading guilty.  Defendant understands that this waiver includes,
but is not limited to, arguments that the statute to which defendant
is pleading guilty is unconstitutional, and any and all claims that
the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

17

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

23.   Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction within or below the range corresponding to an offense level of 26 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $4,298,093; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $4,298,093.

18

RESULT OF WITHDRAWAL OF GUILTY PLEA

25.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of

19

1   defendant's obligations are material, a single breach of this

2   agreement is sufficient for the USAO to declare a breach, and

3   defendant shall not be deemed to have cured a breach without the

4   express agreement of the USAO in writing.  If the USAO declares this

5   agreement breached, and the Court finds such a breach to have

6   occurred, then: (a) if defendant has previously entered a guilty plea

7   pursuant to this agreement, defendant will not be able to withdraw

8   the guilty plea, and (b) the USAO will be relieved of all its

9   obligations under this agreement.

10       29.  Following the Court's finding of a knowing breach of this

11  agreement by defendant, should the USAO choose to pursue any charge

12  that was either dismissed or not filed as a result of this agreement,

13  then:

14       a.   Defendant agrees that any applicable statute of

15  limitations is tolled between the date of defendant's signing of this

16  agreement and the filing commencing any such action.

17       b.   Defendant waives and gives up all defenses based on

18  the statute of limitations, any claim of pre-indictment delay, or any

19  speedy trial claim with respect to any such action, except to the

20  extent that such defenses existed as of the date of defendant's

21  signing this agreement.

22       c.   Defendant agrees that: (i) any statements made by

23  defendant, under oath, at the guilty plea hearing (if such a hearing

24  occurred prior to the breach); (ii) the agreed to factual basis

25  statement in this agreement; and (iii) any evidence derived from such

26  statements, shall be admissible against defendant in any such action

27  against defendant, and defendant waives and gives up any claim under

28  the United States Constitution, any statute, Rule 410 of the Federal

Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

30. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 14 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

1        32.   Defendant understands that even if the Court ignores any

2    sentencing recommendation, finds facts or reaches conclusions

3    different from those agreed to, and/or imposes any sentence up to the

4    maximum established by statute, defendant cannot, for that reason,

5    withdraw defendant's guilty plea, and defendant will remain bound to

6    fulfill all defendant's obligations under this agreement.  Defendant

7    understands that no one -- not the prosecutor, defendant's attorney,

8    or the Court -- can make a binding prediction or promise regarding

9    the sentence defendant will receive, except that it will be within

10   the statutory maximum.

11   <u>NO ADDITIONAL AGREEMENTS</u>

12       33.   Defendant understands that, except as set forth herein,

13   there are no promises, understandings, or agreements between the USAO

14   and defendant or defendant's attorney, and that no additional

15   promise, understanding, or agreement may be entered into unless in a

16   writing signed by all parties or on the record in court.

17   ///

18   ///

19   ///

22

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

34.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney


_____          9/8/2021
RANEE A. KATZENSTEIN               Date
Assistant United States Attorney


_____          08/27/2021
GABRIELA LLERENAS                  Date
Defendant


_____          8-27-21
RONALD L. FREEMAN, ESQ.            Date
Attorney for Defendant Gabriela
Llerenas




///

///

///

23

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_Gabriella Llerenas_ _____     _08-27-2021_ _____
GABRIELA LLERENAS                      Date
Defendant

///

///

///

24

1 <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2     I am GABRIELA LLERENAS's attorney.  I have carefully and

3 thoroughly discussed every part of this agreement with my client.

4 Further, I have fully advised my client of her rights, of possible

5 pretrial motions that might be filed, of possible defenses that might

6 be asserted either prior to or at trial, of the sentencing factors

7 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 a guilty plea pursuant to this agreement.

16                                                       8-27-21

17 RONALD L. FREEMAN, ESQ.                    Date
Attorney for Defendant GABRIELA

18 LLERENAS

19

20

21

22

23

24

25

26

27

28

25

# **EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR |
|      Plaintiff, | I N F O R M A T I O N |
|        v. | [18 U.S.C. § 1341: Mail Fraud] |
| GABRIELA LLERENAS,<br>  aka "Maria G. Sandoval," | |
|      Defendant. | |

The Acting United States Attorney charges:

[18 U.S.C. §§ 1341, 2(b)]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant GABRIELA LLERENAS, also known as "Maria G. Sandoval," was a resident of Perris, California.

2.   California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California.

3.   On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster

Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

4.   Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

5.   The CARES Act established a new program -- Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program are sometimes referred to as PUA benefits.

6.   Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

2

7.    Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications.  Claimants entered their total income for the 2019 calendar year on the application.  The stated income was used to pay the minimum benefits of $167 per week.  EDD could request documentation to provide proof of the stated income.

8.    A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits.  The claimant was required to provide his/her name, Social Security Number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

9.    After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP card was mailed via the United States Postal Service to the claimant at the address the claimant provided in his/her UI application.

B.    THE SCHEME TO DEFRAUD

10.    Beginning by at least April 2020 and continuing through at least October 2020, in Riverside and Los Angeles Counties, within the Central District of California, and elsewhere, defendant LLERENAS, together with others known and unknown to the Acting United States Attorney, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, UI

benefits, including PUA benefits, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

11. The fraudulent scheme operated, in substance, as follows:

a. Defendant LLERENAS filed and caused the filing with EDD of fraudulent applications for UI benefits that falsely asserted the named claimants were self-employed independent contractors who had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act. Defendant LLERENAS obtained some of the names, Social Security Numbers and other identifying information she used to submit the fraudulent claims through her prior work as a tax preparer.

b. In some instances, defendant LLERENAS falsely asserted and caused to be asserted on the UI applications submitted in furtherance of the scheme that the claimants were residents of California entitled to UI benefits administered by EDD when, in fact, they were not and defendant knew they were not.

c. In some instances, defendant LLERENAS falsely asserted and caused to be asserted inflated income for the named claimants on their applications in order to receive the maximum benefit amount.

d. In some instances, defendant LLERENAS made up and caused to be made up the occupation that was listed for the named claimant on the application.

e. To the contrary, and as defendant LLERENAS then well knew, many of the persons named as claimants on the applications defendant LLERENAS filed and caused to be filed had no residential history in the State of California and/or had not been employed in the occupations defendant LLERENAS reported and caused to be reported

on the UI benefits applications she submitted and caused to be submitted in the names of the named claimants.

f.   By falsely asserting that the claimants had worked in the State of California as independent contractors who had lost work because of COVID-19, defendant LLERENAS falsely represented and caused to be falsely represented that the named claimants were entitled to UI benefits administered by EDD when, as defendant LLERENAS then knew, they were not.

g.   As a result of the fraudulent UI benefit claims that defendant LLERENAS filed and caused to be filed, EDD authorized BofA to issue EBP cards in the names of the named claimants.  Defendant LLERENAS knew that the applications she submitted would cause BofA to mail the EBP debit cards issued to the named claimants to the addresses defendant LLERENAS provided and caused to be provided on the fraudulent claim applications, including in some instances addresses that defendant LLERENAS and/or her associates controlled.

12.  Through this scheme, defendant LLERENAS caused approximately 197 fraudulent PUA claims to be filed with EDD resulting in losses to EDD and the United States Treasury of at least $1,633,487.

///

///

///

B.   <u>USE OF THE MAILS</u>

13.   On or about August 6, 2020, within the Central District of California, and elsewhere, defendant LLERENAS, for the purpose of executing the above-described scheme to defraud, willfully caused an envelope containing a BofA debit card issued in Jo. G. to be to be sent and delivered by the United States Postal Service, according to the directions thereon, to an address in Compton, California.

TRACY L. WILKISON
Acting United States Attorney


SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

**EXHIBIT B**

**STATEMENT OF FACTS**

**IN SUPPORT OF PLEA AGREEMENT**

Defendant GABRIELA LLERENAS, also known as Maria G. Sandoval," ("defendant") represents and admits that the following facts are true:

**Background**

At all times relevant to the charge in the Information:

a.   Defendant was a resident of Perris, California.

b.   California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California.

c.   On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

d.   Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed workers, independent contractors, and employees with

Read and Agreed to ＿＿＿＿

insufficient earnings were not eligible to receive regular UI benefits.

e.   The CARES Act established a new program -- Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits including business owners, self-employed workers, independent contractors, and those with a limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program are sometimes referred to as PUA benefits.

f.   Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she had previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

g.   Persons applying for PUA benefits did not need to submit any supporting documents to the EDD with their applications.  Claimants entered their total income for the 2019 calendar year on the application.  The stated income was used to pay the minimum benefits of $167 per week.  EDD could request documentation to provide proof of the stated income.

h.   A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits. The claimant was required to provide his/her name, Social

2

Read and Agreed to _____

Security Number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

    i.   After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by the Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP card was mailed via the U.S. Postal Service to the claimant at the address the claimant provided in his/her UI application.

### The Scheme to Defraud

    From at least April 2020 through at least October 2020, defendant, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to fraudulently obtain UI benefits, including PUA benefits from EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, UI benefits, including PUA benefits, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

    Defendant filed and caused the filing with EDD of fraudulent applications for UI benefits, which falsely asserted the named claimants were self-employed independent contractors who were negatively affected by the COVID-19 pandemic, triggering eligibility for UI benefits under the PUA provision of the CARES Act.  Defendant obtained some of the names, social security numbers and other identifying information she used to

3

Read and Agreed to

submit the fraudulent claims through her prior work as a tax
preparer.

In some instances, defendant falsely asserted on the UI
applications submitted in furtherance of the scheme that the
claimants were residents of California entitled to UI benefits
administered by EDD when, in fact, they were not and defendant
knew they were not.   In some instances, defendant falsely
reported inflated income to EDD for the named claimants on their
applications in order to receive the maximum benefit amount.   In
some instances, defendant made up the occupation that she
reported for the named claimant.   Defendant also defrauded and
attempted to defraud at least one of the named claimants by
falsely representing that she was employed by EDD and could
control the distribution of UI benefits, and then demanding
payment from the named claimant in return for filing the UI
application and "releasing" the benefits.

Defendant submitted multiple claims per day.   For instance,
on May 11, 14, 18, and 23, 2020, she submitted 12 claims, 8
claims, 13 claims, and 20 claims, respectively.   Approximately
133 of the 197 applications that defendant submitted or caused
to be submitted did not include a driver's license number or
other identifying number for the named claimant.   Twenty-five
applications identified the named claimant's occupation as
baker, baker/decorator, baker/decorator/party planner, cake
decorator, cake decorator/server, decorator, decorator/baker,
event attendant, event attendant/decorator, event
decorator/dessert baker, or event decorator/dessert baker/host;

4

Read and Agreed to ____/____

17 applications identified the named claimant's occupation as banquet server or banquet server and host; and nine listed no occupation at all.

As a result of the fraudulent UI benefits applications that defendant filed and caused to be filed, the EDD authorized BofA to issue EBP debit cards in the names of the named claimants. Defendant knew that the applications she submitted would cause BofA to mail the EBP debit cards issued to the named claimants to the addresses defendant provided and caused to be provided on the fraudulent claim applications, including in some instances addresses that defendant or her associates controlled.

On October 20, 2020, as part of the scheme to defraud described above, defendant possessed at her residence in Perris 35 EBP debit cards issued in other people's names in response to UI benefits applications that she submitted or caused to be submitted.  The accounts associated with these 35 debit cards received $790,372 in UI benefits.

At least 29 EBP debit cards issued in other people's names in response to UI benefits applications that defendant submitted or caused to be submitted as part of her scheme to defraud were mailed to defendant's Perris residence (2 cards), defendant's husband's business location (3 cards), the apartment occupied by defendant's mother (6 cards), a Bellflower address associated with defendant's family (6 cards) and addresses in Tulare (not including the Sacramento Street address discussed below) that were occupied by defendant's friends (12 cards).  The accounts

5

Read and Agreed to

associated with these 29 debit cards received $596,546 in UI benefits.

The accounts associated with other EBP debit cards issued in response to the fraudulent applications defendant submitted and caused to be submitted in furtherance of her scheme also received substantial UI benefits.  For example, an application that defendant submitted falsely reported that L.M. was a musician/tattoo artist who had lost work because of COVID-19. The bank account associated with the EBP debit card issued as a result of the fraudulent application defendant submitted in L.M.'s name received $26,400 in UI benefits.  As a further example of the scheme, on July 24, 2020, defendant submitted and caused to be submitted fraudulent applications on behalf of seven persons.  On each of these applications, defendant provided and caused to be provided as each named claimant's mailing address the same address on Sacramento Street in Tulare and provided no driver's license number or other identifying number.  Each of these applications resulted in $21,900 in fraudulently obtained UI benefits, for a total of $153,000.  As another example of the scheme, a false claim that defendant submitted for P.E. resulted in losses to EDD of $25,200.

Defendant would charge the named claimants a fee for filing the applications for UI benefits.  Sometimes the named claimants paid the fee by providing a portion of the benefits received to defendant.

6

Read and Agreed to

Through this scheme, defendant caused approximately 197 fraudulent PUA claims to be filed with EDD resulting in losses to EDD and the United States Treasury of at least $1,633,487.

**Executions of the Scheme to Defraud**

As executions of this scheme, defendant caused UI benefits applications in the names of J.G. and C.G., a husband and wife, and their sons V.G. and Jo.G., to be filed on or about May 11, 2020, May 11, 2020, May 27, 2020, and August 6, 2020, respectively.  The information on the applications was false because J.G. and C.G. were not working and thus did become unemployed due to COVID-19; Jo.G. did not apply for UI benefits and V.G. was employed and did not lose work due to COVID-19. Neither J.G., C.G., V.G. or Jo.G. authorized anyone to apply for UI benefits in his/her name.  As a result of the UI benefits applications that defendant filed and caused to be filed in J.G., C.G., and V.G.'s names, on or about May 11, 2020, June 1, 2020, and May 27, 2020, respectively, Bank of America mailed EBP debit cards to an apartment in Paramount, California, in which defendant's mother was living.  Each of the cards provided access to a bank account that was funded by EDD with UI benefits worth $21,000, $4,469 and $16,500, respectively.  As a result of the UI benefits application that defendant LLERENAS filed and caused to be filed in Jo.G.'s name, on or about August 6, 2020, Bank of America mailed an EBP debit card to an address in Compton, California.  This card provided access to a bank account that was funded by EDD with UI benefits worth $21,900

7

Read and Agreed to

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA
AGREEMENT in its entirety.  I have had enough time to review
this statement of facts and I have carefully and thoroughly
discussed every part of it with my attorney.  I agree that this
statement of facts is sufficient to support a plea of guilty to
the charge described in the plea agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 13 of the
plea agreement.

_____         08-27-2021
GABRIELA LLERENAS                       Date
Defendant


I am GABRIELA LLERENAS's attorney.  I have carefully and
thoroughly discussed every part of this statement of facts with
my client and agree that it is sufficient to support a plea of
guilty to the charge described in the plea agreement and to
establish the Sentencing Guidelines factors set forth in
paragraph 13 of the plea agreement.

_____         _____
RONALD L. FREEMAN, ESQ.                 Date
Attorney for Defendant
GABRIELA LLERENAS

8

Read and Agreed to