Ronald L. Freeman
Law Office of Ronald L. Freeman
473 E. Carnegie Dr., Ste 200
San Bernardino, CA 92408
Telephone: (951) 525-5610
Email: atty@ronaldfreemanlaw.com

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GABRIELA LLERENAS,

Defendant.

Case No.: 5:21cr-00187-JWH

POSITION OF DEFENDANT GABRIELA LLERENAS
RE: SENTENCING FACTORS

**Sentencing Date:** February 4, 2022
**Sentencing Time:** 2:00 p.m.
**Location:** Courtroom of the Hon. John W. Holcomb

Defendant Llerenas, by and through her attorney of record, in this case, Ronald Freeman, hereby submits her Position Re: Sentencing Factor Brief.

Ms. Llerenas' position regarding sentencing is based upon the attached memorandum of points and authorities, the Presentence Report ("PSI"), the files and records in this case, and any other evidence the Court may wish to consider at the time of sentencing.

Dated: January 31, 2022.

Respectfully Submitted

*/s/ Ronald Freeman for Defendant*

# MEMORANDUM OF POINTS AND AUTHORITIES

As discussed herein, a sentence within the advisory guidelines range is greater than necessary to achieve the statutory sentencing purposes of 18 USC § 3553(a). Ms. Llerenas' history and characteristics, a notable absence of loss to private victims due to her criminal conduct, and the substantial assistance provided to the government weigh in favor of a sentence below the applicable guidelines range. Accordingly, Ms. Llerenas requests a sentence of 48 months' imprisonment - a downward variance of 15 months below the bottom of the guidelines range recommended by the government. Such a sentence is "sufficient, but not greater than necessary" to achieve the Congressional sentencing objectives of 18 USC § 3553(a).

## I. Factual history; Loss Amount and Sentencing calculations.

On November 5, 2021, pursuant to a written plea agreement, Ms. Llerenas pled guilty to an information, charging her with one count of Mail Fraud, in violation of 18 USC § 1341. The Presentence Investigation Report (PSI) calculated a total offense level of 26, after credit for acceptance of responsibility. PSI at 12. This included a base offense level of 7, USSG §2B1.1(a)(1), an 18-point enhancement for a loss amount exceeding $3.5 million[1], USSG §2B1.1(b)(1)(J), a 2-level increase for the number of victims, USSG §2B1.1(b)(2)(A), and a 2-point enhancement for the use of any means of identification, USSG §2B1.1(b)(11)(C). PSI at 10-11. Both the Probation and Pretrial Services Office and the government have recommended a sentence at the bottom end of the guidelines. *See* Sent. Rec. Letter. at 6, Gov. Sent. Pos. at 1.

As discussed further below, the government moved for a one-level downward departure, pursuant to USSG §5K1.1, as a result of Ms. Llerenas' cooperation. Based on

[1] As discussed herein, Ms. Llerenas respectfully submits that the loss amount contained within the PSI overstates her actual culpability.

a total offense level of 25, Ms. Llerenas' advisory sentencing guidelines range is 63 to 78 months' imprisonment, at a criminal history category II.

Ms. Llerenas respectfully submits that the loss amount contained within the PSI overstates her conduct. Ms. Llerenas admitted that the loss is at least $1,633,487 as part of her plea agreement. The government argues that the applicable loss amount is $4,298,093. Ms. Llerenas objects to this calculation; thus, the government bears the burden of establishing the loss.[2] Although the government has identified additional filed claims, it cannot establish that Ms. Llerenas is responsible for this conduct. The government is only able to place the claims in either physical or temporal proximity to Ms. Llerenas. Without more, these additional claims cannot be attributed to Ms. Llerenas.

Respectfully, the applicable loss amount is $1,633,487 - the amount contained within the plea agreement. This yields a 16-point enhancement, pursuant to USSG §2B1.1(b)(1)(I)[3], and a total offense level of 24 after credit for acceptance of responsibility. PSI at 5. After a one-point reduction for substantial assistance, pursuant to USSG §5K1.1, the total offense level is 23, and the advisory sentencing guidelines range is 51 to 63 months' imprisonment at criminal history category II.

## II. Application of Section 3553(a); downward variance requested.

As the PSI identifies, the parties may argue for a sentence outside the applicable sentencing guidelines range, under 18 USC § 3553(a)(1), (2), (3), (6), and (7). PSI at 5. *See also* Sent. Rec. Letter., Dkt. 34, at 6 (outlining the applicable Section 3553(a)

---

[2] *See United States v. Villa*, 589 F. App'x 532 at 3, No. 12-16338 (11th Cir., Jan. 12, 2015) (unpublished) ("When a defendant challenges the loss amount provided in his PSI, the government bears the burden of establishing the loss by a preponderance of the evidence.)

[3] U.S.S.G. §2B1.1(b)(1)(I) is applicable where the loss amount was less than $3.5 million, but more than $1.5 million.

factors). In the present case, a number of factors weigh in favor of a sentence below the advisory guidelines range.

**A. History and Characteristics of Ms. Llerenas**

Considering Ms. Llerenas' history and characteristics under 18 USC § 3553(a)(1), a downward variance is appropriate in this case. Ms. Llerenas was raised in a single-parent household. PSI at 16. Despite her mother working various jobs, the primary source of household income was government assistance. *Id.* Because her mother worked long hours, Ms. Llerenas' became the primary caregiver for her siblings. *Id.* She was the victim of sexual assault by the age of eight. *Id.* And by the age of 16, she watched as her boyfriend was shot and killed. *Id.* at 16-17.

Perhaps as a method of coping with early traumas, Ms. Llerenas turned to alcohol and drugs at a young age. PSI at 18. At 14, she began drinking alcohol. *Id.*, she began using marijuana. *Id.* A year later, she began experimenting with crack cocaine as well. *Id.* By the age of 20, she started using methamphetamine. *Id.* Ms. Llerenas obtained treatment for her substance abuse in 2002 and has been able to remain sober since. *Id.* at 18. Nevertheless, Ms. Llerenas has expressed a desire to obtain mental health treatment to address these early traumas she suffered. *Id.* at 19.

Despite her struggles, Ms. Llerenas successfully graduated high school in 1995, obtained her associate degree in 1998, and a bachelor's degree in 2005. PSI at 18. She has been gainfully employed since her release from incarceration in 2004. *Id.* at 18-19. Ms. Llerenas has four children, three of whom reside with her and her husband of five years. *Id.* at 17.

Certainly, the challenges Ms. Llerenas faced during her life shed light on her conduct in this case. *See Rita v. United States*, 127 S. Ct. 2456, 2473 (2007) (Matters such as age, education, mental or emotional condition, medical condition (including drug

or alcohol addiction), employment history, lack of guidance as a youth, family ties . . . are not ordinarily considered under the Guidelines . . . . These are, however, matters that § 3553(a) authorizes the sentencing judge to consider."). More importantly, Ms. Llerenas' history demonstrates her ability to be rehabilitated absent a lengthy custodial sentence. *See gen. United States v. LaCoste*, 821 F.3d 1187, 1191 (9th Cir. 2016) (noting the goals of sentencing are "deterrence, protection of the public, [and] rehabilitation"); *United States v. Mirando*, No. 19-50384 at 4 (9th Cir. October 25, 2021) (unpublished) ("but for [the defendant's] rehabilitation evidence, [the district court] would have imposed a harsher sentence.").

**B. Reflection of the Seriousness of the Offense**

Pursuant to 18 USC § 3553(a)(2)(A), the sentence imposed must reflect the seriousness of the offense. As described in the PSI, Ms. Llerenas submitted false unemployment insurance claims using identifying information for individuals. PSI at 7-8. This caused the issuance of debit cards containing unemployment funds that were ultimately delivered to Ms. Llerenas. *Id.* at 8. Notably, Ms. Llernas' conduct did not result in any personal losses to those whose information she fraudulently used. Instead, her conduct only resulted in losses to California's Employment Development Department (EDD) and the United States Treasury. *Id.* at 6-7.

Ms. Llerenas does not advance this argument in an attempt to deny her culpability. Rather, she seeks to distinguish the conduct from other fraud schemes, many of which cause significant losses to private individuals and are all calculated under the same guideline section. *See* USSG §2B1.1 (including larceny, embezzlement, theft, stolen property, property damage, fraud, forgery, counterfeit instruments). Here, although the conduct involved the use of identifying information, none of the victims suffered a personal financial loss. This conduct is quite distinct from other criminal activity that is

calculated under the same guidelines range. *Cf. United States v. Thornton*, 511 F.3d 1221, 1224 (9th Cir. 2008) (defendant's sentence calculated under §2B1.1 where he defrauded individuals out of personal funds by soliciting contributions to fictitious charities); *United States v. Treadwell*, 593 F.3d 990, 992 (9th Cir. 2010) (defendants defrauded 1,700 individuals out of $40 million in investment funds). As such, because Ms. Llerenas' conduct is demonstrably less injurious than other offenses calculated under the same guideline section, this case is worthy of consideration for a downward variance at sentencing.

### C. Ms. Llerenas' Cooperation and Willingness to Assist the Government

Prior to entering a guilty plea to the information filed in this matter, Ms. Llerenas worked diligently to aid the government in the investigation and prosecution of others. Notably, Ms. Llerenas entered into a cooperation agreement, met with the government, and was debriefed. Recognizing that Ms. Llerenas provided substantial assistance, the government has requested a one-level downward departure pursuant to USSG §5K1.1.

Ms. Llerenas' substantial assistance demonstrates her acceptance of responsibility, remorse, and her desire for rehabilitation. Accordingly, this factor favors a downward variance in her sentence. *See United States v. Ressam*, 679 F.3d 1069, 1091 (9th Cir. 2012) ("the defendant's cooperation with authorities" may be considered as part of her "history and characteristics" under § 3553(a)(1)); *United States v. Zolp*, 479 F.3d 715, 721 (9th Cir. 2007) ("[T]he district court did not err by considering [the defendant's] cooperation as part of its analysis under 18 USC § 3553(a) . . .").

## III. Residential Drug Abuse Program

Ms. Llerenas respectfully requests that the Court recommend that she be considered for participation in the Bureau of Prison's Residential Drug Abuse Program (RDAP). As part of this request, Ms. Llerenas asks that the Court further recommend that

the Bureau of Prisons conduct a mental health evaluation and provide all necessary treatment.

**CONCLUSION**

For the reasons articulated above, Ms. Llerenas respectfully submits that a sentence within the advisory guidelines range is greater than necessary to achieve the statutory sentencing purposes of 18 USC § 3553(a). Ms. Llerenas' history and characteristics, a notable absence of loss to private victims, and the defendant's earnest attempt to assist the government all weigh in favor of a sentence below the applicable guidelines range. Accordingly, Ms. Llerenas requests a sentence of 48 months' imprisonment - a downward variance of 22 months below the bottom of the guidelines range recommended by the Probation and Pretrial Services Department.

Dated this January 31, 2022.

Respectfully submitted,

*/s/ Ronald Freeman for defendant*